Bryan Belgrove
261 McCarrey Street
Unit 12
Anchorage, Alaska 99508

Pro Se Plaintiff



APR 1 5 2013

CLERK, U.S. DISTRICT
COURT



APR 12 2013

CLERK, U.S. DISTRICT
COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BRYAN BELGROVE, )
)
Plaintiff, )
)
vs. )
)
NORTH SLOPE POWER, ELECTRIC )
AND PUBLIC WORKS. )
)
Defendant. )
_____ ) Case No. 3:13-cv-0068-SLG

### PLAINTIFF'S COMPLAINT FOR RETALIATION
### AGAINST A WHISTLEBLOWER

Plaintiff, Bryan Belgrove, Pro Se, for his Complaint against the North Slope Power, Electric and Public Works, does allege as follows:

### PARTIES

1. Bryan Belgrove is a resident of Anchorage, Alaska, and up until he was wrongfully terminated on August 29, 2011. Mr. Belgrove was employed by the North Slope Power, Electric and Public Works located in Barrow, Alaska.

2. The North Slope Power, Electric and Public Works (NSB) is a corporation that provides federally sponsored electrical and power contract services to rural villages located within the State of Alaska.

## JURISDICTION AND VENUE

3. This complaint asserts claims under both federal and state laws. Because the amount in controversy exceeds $1,000,000 this court has diversity jurisdiction under 28 U.S.C. § 1332. The court also has subject matter jurisdiction under 28 U.S.C. § 1331.

4. Venue is proper in this court because the facts and circumstances that give rise to this action arose in the District of Alaska.

5. The North Slope Power, Electric and Public Works is subject to personal jurisdiction in this district because it performed the unlawful conduct complained of within the State of Alaska and it engages in business within the District of Alaska.

6. NSB is also a federally sponsored contractor.

## FACTUAL ALLEGATIONS

7. Plaintiff Belgrove's employment with NSB began on January 12th of 2011 as an Apprentice Lineman; the terms of his employment were probationary on that start date.

8. For 90 days, the plaintiff was successfully employed at NSB, until of April 19 of 2011, when the plaintiff reported, two separate occasions, of racially motivated workplace violence against him committed by with a Caucasian employee, Perry Welch, which led to the plaintiff's discharge without cause during the probationary period.

9. Upon discharge, the plaintiff immediately contacted and reported the events to John Hakala, the State Director of the Federal Apprenticeship Program for the U.S. Department of Labor.

10. John Hakala immediately contacted "NSB" to obtain more facts about the situation.

11. John Hakula, then, informed "NSB" that they needed to rehire the plaintiff because it had failed to register him and another apprentice and were in violation of CFR 29.3.

12. Reluctantly, "NSB" rehired the plaintiff, with "no breaks in service" and the plaintiff was put back to work at the request and demand of John Hakala and the Federal government.

13. After rehire May 2, 2011, the plaintiff noticed a considerable change in the work environment and the attitudes of co-workers, towards the plaintiff, were extremely hostile, upon his reinstatement. The other employees did not want to personally deal with the plaintiff because they considered him a "snitch or whistle-blower".

14. In addition, the plaintiff's supervisor, Jason Bagienski, May of 2011,, made threats to the plaintiff in the village of Kaktovik, Alaska, that "when he became the plaintiff's boss; he would immediately fire the plaintiff"; the assumption now being because he "snitched and blew the whistle" on other employees and the company to the federal government and got a "white" worker fired in April.

15. In June of 2011, there were several racially motivated incidences that were reported, by the plaintiff, to his supervisors; but they were never documented nor were any corrective actions taken.

16. On several more occasion the plaintiff complained about harassment to a supervisor, Chris Dunbar and Max Ahgeak, and no corrective actions were taken, once again.

17. On July 13, 2011, the plaintiff satisfactorily completed the probationary period; became a permanent employee with NSB; and was sent to school, on July 16, 2011.

18. As a permanent employee the plaintiff was only subject to discharge with cause.

19. On July 20, 2011, Supervisor, Jason Bagienski, went to NSB's Human Resources Department and retrieved the plaintiff's file for the specific purpose of adding manufactured documentation to discharge the plaintiff.

20. On August 4, 2011, the plaintiff arrived back to work in Barrow; there are no written reports of any incidents and or problems. On August 10, 2011, Bagienski returned to human resources to retrieve the file that was created by Bagienski, and others, to fire the plaintiff.

21. On August 11, the plaintiff was placed on administrative leave.

22. August 29, 2011, the plaintiff was terminated.

23. The plaintiff alleged in a prior suit that the events that occurred during the probationary period, were the ~~plaintiff's~~ DEFENDANT'S sole reason for discharge and were also events that the company could have fired the plaintiff for, without cause, prior to July 13, 2011.

24. The plaintiff, come now, alleges that the primary reasoning behind the defendant's actions, discharging the plaintiff, was the defendant's fear of a retaliation claim based on the

plaintiff's prior reports to the United States Department of Labor's Apprenticeship Program, which led to the plaintiff's forced rehire.

25. The plaintiff also alleges that, if these acts or events of workplace violence had occurred, as alleged by the defendant, on the part of the plaintiff, during the probationary, were true; then the defendant had a legal right to fire him at that time, immediately

26. The plaintiff asserts that the defendant chose not to fire him during the probationary period, for a second time, because the allegations, as they were presented against the plaintiff, were not true. In addition, the defendant was also under the false assumption that if it fired the plaintiff under the "umbrella" of its policies and procedures, as a permanent employee; then it could avoid a suit of retaliation against a "whistleblower" and all other suits, based on illegal discharge, because, the plaintiff, was now their sole property.

27. Based on the actions of the employer it is clear that they did not want to rehire the plaintiff because he reported their violations of CFR 29.3 & 29.5, to the U.S. Department of Labor Apprenticeship Program's Director, John Hakala, and were subsequently sanctioned in April of 2011, as required by law.

28. The plaintiff has another pending suit against the same defendant. However the theories based on the facts contained in this complaint were not available prior to the deadline to amend the previous complaint. The plaintiff sees this complaint as a separate issue; not based on racially discriminatory practices; but retaliation and unlawful discharge based on being a whistleblower.

## COUNT I
## RETALIATORY DISCHARGE IN VIOLATION OF FALSE CLAIMS ACT
## 31 U.S.C §§ 3729-3733

29. This complaint incorporates by reference all preceding paragraphs.

30. By making a report of his termination in April of 2011, and exposing the company's failure to register himself and other apprentices the plaintiff engaged in activity protected by the False Claims Act.

31. The plaintiff was wrongfully terminated in retaliation for engaging in that protected activity.

32. NSB's wrongful termination violated the False Claims Act and caused the plaintiff to suffer damages in excess of $10,000,000 the precise amount to be proved at trial.

33. The plaintiff is entitled to all relief afforded to him under the False Claims Act.

## COUNT II
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

34. This complaint incorporates by reference all preceding paragraphs.

35. NSB's retaliation against the plaintiff for reporting and/or opposing unlawful conduct, as well as the other things discussed above, constitute the tort of wrongful termination in violation of the public policy of the State of Alaska.

36. As a result of NSB's wrongful termination in violation of public policy, Mr. Belgrove suffered damages in excess of $10,000,000 the precise amount to be proved at trial.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

37. This complaint incorporates by reference all preceding paragraphs.

38. In Alaska, all employment contracts contain an implied covenant of good faith and fair dealing.

39. NSB had a policy that expressly required its employees to report illegal and discriminatory practices that occurred in the workplace. In addition, as an apprentice in a federally funded program the plaintiff had a similar requirement.

40. NSB breached the covenant of good faith and fair dealing when it terminated the plaintiff in retaliation after he complied with the company policy and reported the events of April 2011 to the USDOL. Thereby, causing the defendant to be sanctioned as required by law for the negligent record keeping that, ultimately, requiring them to rehire the plaintiff in May of 2011; only to discharge him again in August 2011; when the defendant thought they were beyond the USDOL's authority and apparently legal recourse.

41. As a result of NSB's breach of the covenant of good faith and fair dealing, the plaintiff suffered damages, in excess of $10,000,000, the precise amount to be proven at trial.

## COUNT IV
## PUNITIVE DAMAGES

42. This complaint incorporates by reference all preceding paragraphs.

43. NSB's conduct in this matter was outrageous, including acts done with malice or bad motives.

44. NSB's conduct evidenced reckless indifference to the interest of another person.

45. In order to punish and deter such wrongful conduct, NSB should be ordered to pay punitive damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, BRYAN BELGROVE asks this court to enter judgment in his favor, including:

1. An award of all available damages, including actual, consequential, statutory, special and punitive damages, plus pre-judgment and post-judgment interest, in an amount to be proven at trial in excess of $ 50,000,000.

2. An award of legal fees and costs.

3. Such other relief, including equitable relief, as the court may deem reasonable and proper in the interests of justice.

### DECLARATION UNDER PENALTY OF PERJURY

I, Bryan Belgrove, declare under penalty of perjury, that I have reviewed the above motion, and that the information contained in this motion is true and correct.

Dated at Anchorage, Alaska this 11th day of April, 2013.

_____
BRYAN BELGROVE